No. 21-4367

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

MONTES TERELL MILLER,

*Defendant-Appellant*.

---

DEFENDANT-APPELLANT MILLER'S
MOTION FOR RELEASE PENDING APPEAL

---

Sarah M. Powell

210 Science Drive
Durham, N.C. 27708
(202) 236-8876

*CJA-Appointed Counsel for
Defendant-Appellant*

Pursuant to 18 U.S.C. §§ 3141(b), 3143(b), and Federal Rule of Appellate Procedure 9(b), Defendant-Appellant Montes Terell Miller respectfully requests that this Court order his immediate release on personal recognizance pending resolution of his appeal under the same conditions of his release during the district court proceedings. In support of this motion, Miller states as follows.

## BACKGROUND

Montes Terell Miller is 22 years old and has lived his entire life with his mother, grandmother, and sister, in Durham, North Carolina. SJA60–61.[1] Until the federal convictions, his criminal record consisted of a single sentence of 12 months of probation—the least serious felony sentence possible under state law—for two offenses occurring within two months, when Miller was 19 years old. *See* Opening Br. 7, ECF No. 18. He had never spent a day in prison in his life. JA207.[2]

---

[1] Cites to the Joint Appendix, Volume I of IV, are given as "JA#"; the Sealed Joint Appendix, Volume II of IV, are "SJA#." ECF Nos. 19-1, 20.

[2] *See* Department of Public Safety, Offender Public Information, https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view.

Miller pleaded guilty to two charges under 18 U.S.C. § 922(g)(1), for possessing ammunition on September 7, 2020, and a firearm on December 22, 2020.  JA102-03; JA132-33.  The final sentencing range under the U.S. Sentencing Guidelines was **41 to 51 months**.  The PSR found no reason for an upward variance or departure, recommending a sentence in the middle of the range.  SJA31–32; SJA66–67.  At sentencing, the district judge imposed an upward variance sentence of 6 years in prison.[3]  Miller is currently held at a medium security prison, 3 hours away from his family in North Carolina.[4]

In the district court proceedings, all agreed that Miller's conduct stemmed from making poor choices of friends, rather than a commitment to crime.  Miller's "conduct is driven by his association with negative peers."  SJA68; SJA61 (probation officer advised Miller to avoid "negative environments, and stay positive").

---

[3] The judgment of conviction required to be submitted under Federal Rule of Appellate Procedure 9(b) is included in the joint appendix.  *See* JA212–20.

[4] Bureau of Prisons, inmate search, https://www.bop.gov/inmateloc//.

After the federal charges, Miller's mother bought a house in Roxboro, North Carolina, a small town in Person County, an hour north of Durham.  JA194.  Leaving Durham had a significant impact on Miller's life, a fact the district judge acknowledged at sentencing, "I am glad you are out of that community."  JA202.

Miller's detention proceeding was the longest proceeding of the district court case.  *See* JA22–93.  The government presented the witness testimony of an FBI agent and exhibits.  Nevertheless, the magistrate judge determined Miller was not a flight risk or danger to the community and released him on personal recognizance under § 3142.  JA94–97 (order for release).  The district judge twice agreed with the magistrate judge's conclusion: after Miller pleaded guilty and after sentencing.  JA210; *accord* SJA68 (PSR recommending voluntary surrender).

Miller had no violations of any kind throughout the district court proceedings, for almost 9 months.[5]  JA141; JA210.  "None whatsoever."  The probation officer reported that she "had actually just provided

---

[5] JA105 (defense counsel status update); SJA1–2 (U.S. Probation Office Release Status Report).

positive reinforcement because there's been no issue, in her words."

JA141.

The government itself recommended Miller's release after he

pleaded guilty. "The Government spoke with the supervising probation

officer this morning who communicated that Mr. Miller has complied

with all of his requirements. So based upon that, the current lack of jail

space, and the ongoing pandemic, the Government ... believes it to be

appropriate for Mr. Miller to stay out and would make that

recommendation to the Court." JA138. Again after sentencing, the

government did not object to Miller's continued release. JA209. Miller

voluntarily surrendered himself to begin his sentence on September 7,

2021, two months after sentencing.

Miller has been held in medium security prison for a little over 3

months. In that time, he was appointed new counsel for his direct

appeal under the Criminal Justice Act, who prepared and filed his

opening brief on December 9, 2021. Briefing in his appeal is still

ongoing.

Miller's opening brief raised substantial challenges to his conviction and sentence. For example, although not every North Carolina offense labeled a "felony" qualifies as a § 922(g) predicate, and most people convicted of state "felonies" receive only sentences of probation, the district judge interpreted the essential *mens rea* element to require only that Miller knew *of* his earlier state "felony" convictions. Opening Br. 3–9, 36–42. The judge's interpretation directly contradicts the plain language of the statute and Supreme Court precedent in *Rehaif v. United States*, 139 S.Ct. 2191, 2194 (2019), and *Greer v. United States*, 141 S.Ct. 2090, 2097 (2021). The government's factual basis was insufficient as a matter of law, showing only that when Miller pleaded guilty to the two North Carolina "felony" offenses, he had been informed of the maximum punishments for the worst hypothetical defendants who would have received aggravated sentences. Circumstances show that Miller did *not* know that his earlier convictions carried the possibility of more than one year in prison for him personally. Opening Br. 3–9, 46–50.

Miller also raised substantial challenges to the calculation of the Guidelines sentencing range that would result in a sentencing range of 24 to 30 months. He was not on probation, as a matter of fact and North Carolina law, and the 4-level enhancement for possession of a firearm "in" connection with another felony offense does not apply. And Miller argued that the upward variance sentence of 6 years in prison was unwarranted and did not serve the purposes of § 3553(a). It was unsupported by the facts of Miller's case or the law. And it was drastically out of step with sentences of similar defendants. Opening Br. 51–75.

## DISCUSSION

### MILLER REQUESTS THE COURT ORDER HIS RELEASE ON PERSONAL RECOGNIZANCE PENDING HIS DIRECT APPEAL.

Nothing has changed in Miller's circumstances that led the magistrate judge to determine the factors under § 3142(g) did *not* require Miller to be detained, and the district judge, after Miller pleaded guilty and after sentencing, to again determine that he was not a flight risk or danger to the community.

Miller was not convicted of an offense that would give rise to a presumption that he must be detained under §§ 3142(f)(1)(A)–(C) and 3143(b)(2). Thus, Miller does not need to show "exceptional reasons" why his "detention would not be appropriate" under § 3145(c).

For detention pending trial under § 3142(a), it was the government's burden to prove that Miller was a flight risk and to prove by clear and convincing evidence that Miller was a danger to the community. § 3142(f). However, for release *after* Miller pleaded guilty and before sentencing, the burden was on Miller to show by clear and convincing evidence that Miller would not be a danger or flight risk, the same burden here for release pending appeal. § 3143(a)(1).[6] The district judge's second determination that Miller should remain on personal recognizance, made after sentencing, was governed by the same standards that apply to this motion. § 3143(b).

"Federal law makes bail available to a criminal defendant after conviction and pending appeal provided (1) the appeal is 'not for the purpose of delay,' (2) the appeal 'raises a substantial question of law or

---

[6] *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) ("the burden is on the convicted defendant to overcome that presumption").

fact,' and (3) the defendant shows by 'clear and convincing evidence'
that, if released, he 'is not likely to flee or pose a danger to the safety' of
the community." *Demore v. Kim*, 538 U.S. 510, 578 (2003) (Breyer, J.,
concurring in part) (citing § 3143(b)).  An appeal "raises a substantial
question of law or fact" if the defendant's arguments, assuming they
were accepted, would likely result in reversal, an order for a new trial, a
sentence that does not require imprisonment, or a reduced sentence of
imprisonment that is "less than the total of the time already served plus
the expected duration of the appeal process."[7]  § 3143(b)(1)(B).

The Court "must make two inquiries after finding that the appeal
is not taken for the purpose of delay": whether the appeal presents
substantial questions of law or fact, and, if those questions were
resolved in the defendant's favor, whether the questions are *important
enough* to likely result in the conviction being reversed, an order for
new trial, or a sentence that is less than the time already served plus

---

[7] *See also* § 3141(b) ("A judicial officer of a court of original
jurisdiction over an offense, or a judicial officer of a Federal appellate
court, shall order that ... pending appeal of conviction or sentence, a
person be released or detained under this chapter."); Fed. R. App. P. 9(c)
(court "must make its decision regarding release in accordance with the
applicable provisions of 18 U.S.C. §§ 3142, 3143, and 3145(c)").

the time for the appeal. *See United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991).[8]

The question is *not* whether Miller will certainly succeed on the merits of each of the substantial questions presented in his appeal and whether the district court will actually impose a sentence close to the time he has already spent. A "substantial question" is "a 'close' question or one that very well could be decided the other way. Further, there are no blanket categories for what questions do or do not constitute 'substantial' ones. Whether a question is 'substantial' must be determined on a case-by-case basis." *Id.*; *see also Zimny*, 857 F.3d at

---

[8] *See United States v. Handy*, 761 F.2d 1279, 1280–81 (9th Cir. 1985) ("Congress did not intend to limit bail pending appeal to cases in which the defendant can demonstrate at the outset of appellate proceedings that the appeal will probably result in reversal or an order for a new trial." Thus, "the word 'substantial' defines the level of merit required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of question that must be presented."); *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003) (defendant need only show "a non-frivolous issue that, if decided in the defendant's favor, would likely result in reversal or could satisfy one of the other conditions"); *United States v. Zimny*, 857 F.3d 97, 101 (1st Cir. 2017) (The question "is not ... 'whether *the investigation* will likely result in a reversal or an order for a new trial.' ... Instead, we must ask whether a reversal or new trial is likely *if* the substantial question of fact Zimny has raised … 'is determined favorably to [Zimny].'").

9

100 ("substantiality under § 3143(b) requires only a showing that the question is a close one").  Once the Court finds that Miller presented close questions that could be decided either way, the Court determines whether those questions would likely result in reversal, a new trial, or a significant sentence reduction.  The questions Miller raised are both substantial, close questions, and likely to result reversal or a sentence reduction in Miller's case.

Miller is only 22 years old, who all agreed in the district court is a particularly impressionable young man.  But before beginning his sentence, he was successful at avoiding associations with negative peers and putting his life on the right path.  As the district judge acknowledged, in federal prison, Miller will "run across various individuals who will continue to have gang affiliations and may try to perpetuate gang violence, and you'll run across other individuals who have no interest in bettering themselves."  JA207–08.

A.   Miller Is Not A Flight Risk Or A Danger To The
     Community.

The factors relevant to the Court's determination are: 1) the
nature and circumstances of the offense; 2) the weight of the evidence;
3) the history and characteristics of the defendant, including "the
person's character, physical and mental condition, family ties,
employment, financial resources, length of residence in the community,
community ties, past conduct, history relating to drug or alcohol abuse,
criminal history, and record concerning appearance at court
proceedings," and whether, at the time of the current offense, the
person was on probation for another offense; and "the nature and
seriousness of the danger to any person or the community that would be
posed by the person's release."  *See* § 3142(g) (required factors to
consider in a release determination).

These are the same factors the magistrate judge and district judge
determined did not require Miller's detention during the district court
proceedings.  *See* §§ 3142(a), (g).  "Given the trial judges' close
familiarity with the evidence presented in the case, [their]
determination in regard to this matter should be upheld."  *United
States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991); *Zimny*, 857 F.3d

11

at 99 ("Zimny convincingly argues that he is not a flight risk or danger to the community.... He remained out on bail during trial, and the district court allowed him to self-report to prison following his conviction and the imposition of sentence.").

Furthermore, Miller had no violations of any kind while free on personal recognizance. *Supra* 3–4. Miller already has an established situation for release—at home with his mother, grandmother, and sister—and connections with the probation officer who supervised him during the district court proceedings. Allowing him to be released would simply return him to the situation he was in until September 7, 2021, a situation that all agreed in the district court was supportive and successful.

Although the PSR stated that Miller was on probation for the first federal offense, Miller has argued in this appeal that he was *not* on probation, as a matter of fact and North Carolina law. *See* Opening Br. 9–10, 52–56. Because this fact was weighed heavily by the district judge in imposing the 6-year variance sentence and is a substantial question raised in Miller's appeal under *Steinhorn*, this Court should not accept the PSR's determination for the purposes of deciding this

12

motion.  *See* 927 F.2d at 196; *DiSomma*, 951 F.2d at 498 ("The element of the crime called into question on appeal is the element of the bail statute that bars release.  Because this is so, DiSomma will have been confined unjustly if he prevails on appeal.").

B.    Miller's Appeal Is Not For The Purpose of Delay
      And Raises Substantial Questions Of Fact And Law.

Miller's appeal presents a number of substantial challenges to his conviction and sentence.[9]  *Supra* page 4–6.  For example, whether Miller's convictions are invalid because the government's factual basis was insufficient as a matter of law, and Miller did not know of any status as a felon under federal law; and whether Miller's sentence is procedurally and substantively unreasonable.  Miller argued that the correct sentencing range under the Guidelines was 24 to 30 months, instead of the PSR's calculation of 41 to 51 months—and drastically at odds with the 6-year upward variance sentence he received.

---

[9] The substantial claims raised in this direct appeal further demonstrate that Miller did not pursue his appeal for the purpose of delay.

Thus, if the Court decides these questions in Miller's favor, it would likely result in his conviction being reversed, or a significantly reduced sentence of imprisonment.

C.     The COVID-19 Pandemic Provides A Supportive Reason
       To Order Miller's Immediate Release.

COVID-19 has hit facilities like nursing homes and prisons especially hard and presents unusually difficult circumstances. *See* Williams Aff.[10] "[T]here is an extraordinarily high risk of accelerated transmission of COVID-19 within jails and prisons." *Id.* at 3, ¶ 7. "Inmates share small cells, eat together and use the same bathrooms and sinks…. Some are not given tissues or sufficient hygiene supplies." *Id.* "Effective social distancing in most facilities is virtually impossible, and crowding problems are often compounded by inadequate sanitation, such as a lack of hand sanitizer or sufficient opportunities to wash hands." *Id.* "Access to testing for correctional staff has been 'extremely limited,' guards have reported a 'short supply' of protective equipment,

---

[10] Affidavit of Dr. Brie Williams, "in support of any defendant seeking release from custody during the COVID-19 pandemic," 2, http://www.sado.org/content/pub/11248_affidavit.pdf.

and prisons are not routinely or consistently screening correctional officers for symptoms." *Id.* at 2, ¶ 5.

The Delta variant is still active and the Omicron variant is spreading fast.[11] In January 2021, FCI Williamsburg, where Miller is held, had "one of the highest numbers of confirmed active COVID-19 staff cases among federal prisons around the nation."[12] The prison saw 35 employees infected, 31 active inmate cases, and 2 inmate deaths. As of the date of this motion, there are "**321 federal inmates** and **235 BOP staff** who have confirmed positive test results for COVID-19 nationwide. Currently, **41,746** inmates and **8,624** staff have recovered. There have been **273** federal inmate deaths and **7** BOP staff member deaths attributed to COVID-19 disease."[13]

---

[11] *WHO sounds warning over fast-spreading Omicron*, Reuters, Dec. 20, 2021, https://www.reuters.com/world/omicron-spreading-infecting-vaccinated-who-2021-12-20/.

[12] *35 staff Covid-19 cases, 2 inmate deaths reported at FCI Williamsburg*, Live 5 News, Jan. 21, 2021, https://www.live5news.com/2021/01/21/staff-covid-cases-inmate-deaths-reported-fci-williamsburg/.

[13] Bureau of Prisons, COVID-19 Update, https://www.bop.gov/coronavirus/.

As with all state and federal prisoners, Miller is subject to rigorous lockdowns,[14] limited visiting,[15] and the inability to communicate regularly with counsel and family, even via e-mail.

As required by Fourth Circuit Local Rule 27(a), counsel for the government was contacted and opposes this motion.

\*      \*      \*

WHEREFORE, Defendant-Appellant Montes Terell Miller respectfully requests that this Court order Miller's release pending resolution of his appeal and that his case be remanded for the limited purpose of establishing appropriate conditions of release.

---

[14] Last year, 300,000 inmates were put in solitary confinement. *COVID precautions put more prisoners in isolation.  It can mean long-term health woes.*, NPR.org, Oct. 4, 2021, https://www.npr.org/sections/health-shots/2021/10/04/1043058599/rising-amid-covid-solitary-confinement-inflicts-lasting-harm-to-prisoner-health.

[15] *See* FCI Williamsburg website, available here: https://www.bop.gov/locations/institutions/wil/.

Date: December 20, 2021             Respectfully submitted,


<u>/s/ *Sarah M. Powell*</u>

Sarah M. Powell
210 Science Drive
Durham, N.C. 27708
(202) 236-8876
spowell@law.duke.edu
*CJA-Appointed Counsel for*
*Defendant-Appellant*

17

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. ___21-4367___    **Caption:** United States v. Montes Terell Miller

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines.  Appellee's Opening/Response Brief  may not exceed 15,300 words or 1,500 lines.  A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type.  See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words.  Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓]    this brief or other document contains _____2,966_____ [*state number of*] words

[ ]    this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓]    this brief or other document has been prepared in a proportionally spaced typeface using
MS Word 365 _____ [*identify word processing program*] in
Century Schoolbook 14-point font _____ [*identify font size and type style*]; **or**

[ ]    this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Sarah M. Powell _____

Party Name Montes Terell Miller _____

Dated: 12/20/2021 _____

04/12/2020  SCC